UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

EDWARD JAMES CROMER,

               Plaintiff,                     Case No. 1:17-cv-94

v.                                              Honorable Janet T. Neff

RICK SNYDER et al.,

               Defendants.

_____/

## OPINION

        This is some form of action by a state prisoner invoking the Court's admiralty and maritime jurisdiction under 28 U.S.C. § 1333.[1]  It is difficult to pin down precisely what sort of action Plaintiff intends to bring because his complaint is nothing more than unintelligible legalistic gobbledygook.  Plaintiff is <u>not</u> bringing an action under 42 U.S.C. § 1983 or 28 U.S.C. § 2254.  Plaintiff clearly states that, under these statutes, no remedy is available.  (Am. Compl., ECF No. 7, PageID.82.)

        Even if Plaintiff is raising an admiralty or maritime claim, because he is a prisoner and because he seeks relief from employees or officers of governmental entities, the Court is required to screen his action and dismiss it if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. § 1915A.  The Court must read Plaintiff's *pro se* complaint indulgently, *see*

---

[1] Plaintiff also references "Diversity of Citizenship" on the cover page of his amended complaint.  (Am. Compl., ECF No. 7, PageID.77.)  Plaintiff and Defendants, however, are all citizens of the State of Michigan; thus Plaintiff cannot premise jurisdiction on diversity of citizenship.  28 U.S.C. § 1332.

*Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Factual Allegations

Plaintiff Edward James Cromer is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility in Muskegon Heights, Michigan. Plaintiff is serving life sentences for armed robbery and second-degree murder, consecutive to a two-year sentence for felony firearm. Plaintiff sues Michigan Governor Rick Snyder, Michigan Attorney General Bill Schuette, and Michigan Parole Board members Amy Bonito and Michael Eagen.[2] Plaintiff sues the Defendants in their individual capacities. (Am. Compl. Supplement, ECF No. 8, PageID.118.)

Plaintiff has been in the custody of the MDOC since 1990. He has filed many civil rights and habeas corpus suits in the Michigan federal courts during his incarceration. When Plaintiff alleges that there is no remedy available under 42 U.S.C. § 1983 or 28 U.S.C. § 2254, he speaks from experience.

Having abandoned the federal question basis for jurisdiction, Plaintiff has turned to admiralty. The nature and scope of the Court's admiralty jurisdiction is not often considered in actions brought by state prisoners. Admiralty jurisprudence involves very specific rights and remedies, rights and remedies that are, or perhaps more accurately were, distinct from the "common law." As the Supreme Court stated in *Manro v. Almeida*, 23 U.S. 473 (1825):

---

[2]Plaintiff also adds as Defendants "By and/or through any of their corporate agencies other instrumentalitities other or uni[n]corporated association or persons having attained the attribution of a legal personality; and those JANE DOES and JOHN DOES ET al." (Am. Compl., ECF No. 7, PageID.77.)

The jurisdiction of the admiralty rests upon the grant in the constitution, and the terms in which that grant is extended to the respective Courts of the United States. The forms and modes of proceeding in causes of admiralty and maritime jurisdiction, are prescribed to the Courts by the second section of the Process Act of 1792. In the Process Act of 1789, the language made use of in prescribing those forms implied a general reference to the practice of the civil law; but in the act of 1792, the terms employed are, 'according to the principles, rules, and usages, which belong to Courts of admiralty, as contradistinguished from Courts of common law.'

*Manro*, 23 U.S. at 488.

In many respects the distinct forms and modes of proceeding of the 18th and 19th century have fallen away.  By way of example, the distinction between courts of law and courts of equity disappeared because of the adoption of the Federal Rules of Civil Procedure in 1938. *City of Morgantown v. Royal Ins. Co.*, 337 U.S. 254, 257 (1949) ("The coalescing of law and equity procedure was completed in 1938, with the adoption of the Rules of Civil Procedure.").  But there is still some life in the distinct "principles, rules and usages which belong to Courts of admiralty. . ." *Id.*  Indeed, the Fifth Circuit Court of Appeals cited the *Manro* decision and its approval of maritime attachment just last year. *See Malin Intern. Ship Repair & Drydock, Inc. v. Oceanografia, S.A. de C.V.,* 817 F.3d 241, 244 (5th Cir. 2016).  And, the Federal Rules of Civil Procedure still include the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.[3]

Plaintiff describes himself as a "Property-vessel."  (Am. Compl., ECF No. 7, PageID.83.) Plaintiff sprinkles statutory cites and terminology from Title 46 of the United States Code regarding shipping and Michigan's version of the Uniform Commercial Code throughout his factual allegations.  It appears that Plaintiff contends there was a flaw in his March 7, 1990 preliminary examination:

---

[3]Indeed, Plaintiff cast his initial complaint as a "Statement of Interest" under Rule C(6) of the Supplemental Rules for Admiralty or Maritime Claims and Assets Forfeiture Actions and he continues to reference the rule in his amended complaint.

> Stemming from a March 7, 1990 Contract, 27 year Cromer have been falsely imprisoned and injured by Respondents under the latent Admiralty in State Court Criminal Process.  Cromer was arrested by application of Title 46 USCS § 31-301 in rem, violating exclusive Federal Jurisdiction pursuant to USC §1333.  Then Military Action was used to alter and convert Plaintiff over into Attributed Defendant/Debtor, and forced Cromer into standing trial as a created Legal Fiction EDWARD JAMES CROMER WITHOUT EVER FACING AN INJURED PARTY IN COMMON LAW, or without anyone alleging Cromer had committed a tort or violated any of the constitutional rights into Evidence of Record in court of Equity.

(Am. Compl., ECF No. 7, PageID.81-82.) Specifically, Plaintiff objects to his counsel's preliminary examination stipulation with regard to the content of the medical examiner's report and the identification of the victim.  Using that "flaw" as a foundation, Plaintiff adds layer upon layer of misconstrued legal jargon.  It is not possible to make any sense of the resulting structure; however, Plaintiff does use some language that describes recognizable causes of action.

Construed liberally, Plaintiff claims that Defendants breached a contract (maritime or otherwise), fraudulently concealed something, committed fraud, and committed a tort denying Plaintiff access to the courts by denying him usage of Federal Rule of Civil Procedure 8 and precluding him from obtaining an intellectual and commercial interest in himself.  Plaintiff also states that on March 7, 1990, these Defendants did something that was a "violation of the V. Amendment to the U.S. Constitution, Due Process." (*Id*., PageID.91.)  Plaintiff also complains that committed a tort by operating a parole board which violated the Michigan rules and regulations as well as "V. Amendment of the U.S. Const." (*Id*., PageID.92.)  Plaintiff further contends that Defendants committed a tort when they created a policy that prevents him access to uniform commercial code documents which, in turn, denies him access to the courts contrary to the First Amendment. (*Id*.) Plaintiff seeks equitable and declaratory relief and $27,000,000 in compensatory and punitive damages.

- 4 -

**Discussion**

I.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1)

- 5 -

II. <u>Prisoner civil rights claims</u>

Plaintiff disclaims any intention to file a prisoner civil rights suit under 42 U.S.C. § 1983.  Whatever his intention, he has failed to state a claim under the statute.[4]  To state such a claim, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff identifies two constitutional rights in his complaint and implicates one other.  He specifically states he was denied due process in his criminal proceedings and parole board proceedings; he suggests that he was denied access to the courts, which might violate the First Amendment; and he implies that his defense counsel rendered ineffective assistance which would violate the Sixth Amendment.

 A. <u>Fifth (or Fourteenth) Amendment right to due process and Sixth Amendment right to effective assistance of counsel</u>

Plaintiff contends the criminal proceedings against him were constitutionally flawed.  Such a challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983.  *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release

---

[4]The Court may review any claim under 42 U.S.C. § 1983 to determine if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from suit.  28 U.S.C. §1915A.

from illegal custody).  Therefore, to the extent that Plaintiff's complaint challenges the fact or duration of his incarceration, it must be dismissed.  *See Adams v. Morris*, 90 F. App'x 856, 858 (6th Cir. 2004) (dismissal is appropriate where § 1983 action seeks equitable relief and challenges fact or duration of confinement); *see also Moore v. Pemberton*, 110 F.3d 22, 23-24 (7th Cir. 1997) (reasons for not construing a § 1983 action as one seeking habeas relief include (1) potential application of  *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) differing defendants, (3) differing standards of § 1915(a)(3) and § 2253(c), (4) differing fee requirements, (5) potential application of second or successive petition doctrine or three-strikes rules of § 1915(g)).

To the extent Plaintiff seeks injunctive, declaratory and monetary relief for alleged violations of Constitutional rights, his claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]."  *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (emphasis in original).  In *Heck*, the Supreme Court held that a state prisoner cannot make a cognizable claim under § 1983 for an allegedly unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  *Id.* at 486-87 (footnote omitted).  The holding in *Heck* has been extended to actions seeking injunctive or declaratory relief.  *See Edwards*, 520 U.S. at 646-48 (declaratory relief); *Clarke v. Stalder*, 154 F.3d 186, 189-90 (5th Cir. 1998) (claim for injunctive relief

intertwined with request for damages);  *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401, at *1 (6th Cir. May 5, 1998) (injunctive relief).  Plaintiff's allegations clearly call into question the validity of his conviction.  Therefore, his action is barred under *Heck* until his criminal conviction has been invalidated.

If Plaintiff meant to challenge the process afforded him at his parole hearing under the Fifth or Fourteenth Amendment, he has failed to state a claim.  To establish a procedural due process violation, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law.  *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006).  Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole.  There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence.  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release.  *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  Rather, a liberty interest is present only if state law entitles an inmate to release on parole.  *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole.  The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011).  In *Crump*,

the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. The Michigan Parole Board's failure or refusal to consider Plaintiff for parole, therefore, implicates no federal right. In the absence of a liberty interest, Plaintiff fails to state a claim for a violation of his procedural due process rights.

B.    First Amendment violation

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824-28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility

- 9 -

to the courts.  *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430

U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).  Further, in order to state a viable claim

for interference with his access to the courts, a plaintiff must show "actual injury."  *Lewis v. Casey*,

518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999).

The Supreme Court has strictly limited the types of cases for which there may be an

actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into
> litigating engines capable of filing everything from shareholder derivative actions to
> slip-and-fall claims.  The tools it requires to be provided are those that the inmates
> need in order to attack their sentences, directly or collaterally, and in order to
> challenge the conditions of their confinement.  Impairment of any other litigating
> capacity is simply one of the incidental (and perfectly constitutional) consequences
> of conviction and incarceration.

*Lewis*, 518 U.S. at 355.  "Thus, a prisoner's right to access the courts extends to direct appeals,

habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391

(6th Cir. 1999) (en banc).  Moreover, the underlying action must have asserted a non-frivolous

claim.  *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis*

changed actual injury to include requirement that action be non-frivolous).

Plaintiff fails to allege actual injury to a non-frivolous legal claim.  Instead, he claims

that he has been denied the ability to receive materials that would permit him to file Uniform

Commercial Code (UCC) documents so that he could obtain an interest in himself.  The UCC

regulates the law of sales and other commercial transactions.  It is wholly irrelevant to a prisoner's

claim of entitlement to release from prison in a habeas corpus proceeding or claim for damages or

relief in a prisoner civil rights case.  A prisoner's First Amendment access to the courts claim that

is founded upon a UCC claim, therefore, is frivolous. *See Carter v. Wands*, 431 F. App'x 628, 629

(10th Cir. 2011) (affirming dismissal of petition claiming that the UCC provided a basis for habeas relief); *McNeil-El v. Diguglielmo*, 271 F. App'x 283 (3d Cir. 2008) (affirming dismissal of an access-to-the-courts claim based on the confiscation of UCC materials intended to be filed in a criminal appeal); *Brzezinski v. Smith*, No. 12-cv-14573, 2013 WL 2397522, at *3 (E.D. Mich. May 31, 2013) ("The UCC speaks only to commercial law and does not provide a proper basis for appealing a criminal conviction, writing a habeas petition, or bringing a civil rights action. . . . Any appeal, habeas petition, or civil rights action that relied on the UCC would be frivolous.)  Prisoners' abuses of UCC financing statements are well-documented. *See Rector v. Caruso*, No. 1:10-CV-904, 2011 WL 446149, at *5 (W.D. Mich. Feb. 3, 2011) (collecting cases).  As a consequence, Plaintiff has failed to demonstrate that Defendants caused  actual injury to a nonfrivolous legal action if they interfered with Plaintiff's acquisition or filing of UCC materials.  He has failed to state a claim for violation of his First Amendment rights.

       C.    <u>Rights, privileges, or immunities secured by the United States Constitution or laws</u>

Plaintiff makes reference to three federal constitutional rights in support of his claims; but, he also references violations of MDOC policies, state statutes, and state rules of procedure.  Plaintiff's allegations of state policy, rule, and statutory violations, cannot form the basis for relief under § 1983.  Claims under §1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).  Plaintiff's assertion that Defendants violated state law, regulation, or policy, therefore, fails to state a claim under § 1983.

III.   Admiralty and Maritime claims

Stepping away from the familiar territory of 42 U.S.C. § 1983, Plaintiff has based his claim of this Court's jurisdiction on 28 U.S.C. § 1333, admiralty and maritime jurisdiction.  The statutory grant of such jurisdiction is broad: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction." 42 U.S.C. § 1333.  In most of the world's nations, admiralty or maritime jurisdiction extended to "all matters arising in marine commerce, as well as other marine matters of public concern, such as crimes committed on the sea, captures, and even naval affairs." *New England Mut. Marine Ins. Co. v. Dunham*, 78 U.S. 1, 23-24 (1870).   In Mother England, however, the scope of admiralty jurisdiction was "crippled and restricted" by hostility from the common law courts. *Id.* at 23.  In that regard, the United States differed from England.  For example, where England limited maritime jurisdiction to the "high seas" and excluded from it transactions relating to marine affairs but transacted on the land, this country extended maritime jurisdiction to all navigable waters and to all transactions related to marine commerce no matter where such transactions occurred. *Id.* at 24, 29.

The outlines of admiralty and maritime jurisdiction have been shaped and reshaped by judicial decisions and statutes since the nineteenth century.  Bringing the analysis into the twenty-first century, the Sixth Circuit has more recently described the bounds of maritime jurisdiction as follows:

> Simply because this insurance policy relates to boats and a marina does not necessarily imply that it is a "maritime contract."  As the Supreme Court explained in *Kirby*, "[t]o ascertain whether a contract is a maritime one, we cannot look to whether a ship or other vessel was involved in the dispute, as we would in a putative maritime tort case."  543 U.S. at 23, 125 S. Ct. 385.  Rather, we must "focus[ ] our inquiry on whether the principal objective of a contract is maritime commerce." *Id.* at 25, 125 S. Ct. 385 (emphasis added); *accord Sisson v. Ruby*, 497 U.S. 358, 367, 110 S. Ct. 2892, 111 L. Ed. 2d 292 (1990) ("The fundamental interest giving rise to

> maritime jurisdiction is 'the protection of maritime commerce.' " (quoting *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674, 102 S. Ct. 2654, 73 L. Ed. 2d 300 (1982))). After the Court's decision in *Kirby*, there can be no doubt that our inquiry into whether a contractual dispute falls within our maritime jurisdiction must focus on whether the contract's "primary objective " has an "essentially maritime nature" and relates to "maritime commerce." 543 U.S. at 24–25, 125 S.Ct. 385[.]

*New Hampshire Ins. Co. v. Home Sav. and Loan Co. of Youngstown, Ohio*, 581 F.3d 420, 424 (6th Cir. 2009).[5] Thus, even though Plaintiff describes himself as a vessel[6] and even if he were a boat, he offers no other allegations with regard to navigable waters or marine commerce that support his assertion that his claims fall within admiralty jurisdiction. Accordingly, the Court must dismiss Plaintiff's admiralty and maritime claims for lack of subject matter jurisdiction.

IV.   <u>State law claims</u>

Plaintiff alleges that Defendants violated several state laws, rules or policies. To the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over such state-law claims, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id*. Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v.*

---

[5]For a more detailed explanation of the test applied to determine whether a tort falls within federal admiralty jurisdiction, *see Jerome V. Grubart, Inc., v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). The tort must either occur on navigable water or, if the injury is suffered on land, it must be caused by a vessel on navigable water. *Id*.

[6]"The Rules of Construction Act defines a 'vessel' as including 'every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water.'" *Lozman v. City of Riviera Beach*, 133 S. Ct. 735, 739 (2013) (quoting 1 U.S.C. § 3).

*HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  March 27, 2017                          /s/ Janet T. Neff
                                              Janet T. Neff
                                              United States District Judge